[Cite as *State v. Jones*, 2014-Ohio-2309.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                        :

     Plaintiff-Appellee                        :          C.A. CASE NO.     25724

v.                                                          :          T.C. NO.     11CR3897

JAMES C. JONES, II                              :          (Criminal appeal from
                                               Common Pleas Court)

     Defendant-Appellant                     :

                                                             :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____30th_____ day of _____May_____, 2014.

. . . . . . . . . .

CARLEY J. INGRAM, Atty. Reg. No. 0020084, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

DANIEL E. BRINKMAN, Atty. Reg. No. 0025365, Suite 2000 Liberty Tower, 120 West Second Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

JAMES C. JONES, II, #679133, Lebanon Correctional Institute, P. O. Box 56, Lebanon, Ohio 45036
        Defendant-Appellant

. . . . . . . . . .

FROELICH, P.J.

      **{¶ 1}** James C. Jones II appeals from his conviction for aggravated robbery (deadly weapon), with a firearm specification.  His appointed counsel filed a brief pursuant

to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that no potentially meritorious issues exist for appeal. For the following reasons, we agree with Jones's attorney that no potentially meritorious issues exist, and we will affirm the trial court's judgment.

{¶ 2} Jones was charged with aggravated robbery after he was identified as the person who tried to rob the complainant with a firearm at a bank ATM on October 30, 2011. He remained in jail on a $50,000 bond. Jones moved to suppress the complainant's identification and any evidence seized from him. After a hearing, the trial court overruled the motion. Jones moved to reduce the $50,000 bond that had been imposed; that motion was also overruled.

{¶ 3} In July 2012, the State notified Jones that testing of DNA on a black face mask recovered at the scene would likely consume the entire sample swabbed from the mask. Jones requested the appointment of a DNA expert at the State's expense. Jones's request was granted. The court further ordered that Jones's expert be permitted to observe the DNA testing on items where the DNA will be consumed during testing. Jones subsequently moved for an order requiring the crime laboratory to release certain records for use by Jones's DNA expert, and the court granted the motion.

{¶ 4} On August 22, 2012, the State requested a continuance of the trial date, noting in part that the continuance would not violate Jones's speedy trial rights. Two days later, Jones was released on his own recognizance and placed on electronic home detention. On the same date (August 24), Jones filed a written waiver of his speedy trial time. Jones's electronic home detention was revoked and he was jailed on February 24, 2013. Bond was

set at $100,000.

{¶ 5}   The matter proceeded to a jury trial on March 4, 2013.  The jury found Jones guilty of the aggravated robbery and the firearm specification.  After a presentence investigation, the court imposed a four-year prison sentence, to be served consecutively with and subsequent to a three-year sentence for the firearm specification.  The entry stated that Jones was entitled to 317 days of jail time credit.  The trial court notified Jones that he would be required to complete five years of postrelease control, and it ordered him to pay court costs.

{¶ 6}   Jones appeals from his conviction.  His attorney has filed an *Anders* brief, stating that no potentially meritorious issues for appeal exist, but suggesting that Jones's conviction was based on insufficient evidence and was against the manifest weight of the evidence.  We advised Jones of the filing of the *Anders* brief, and Jones was granted time to file a pro se brief assigning any errors for review; Jones did not file such a brief.  The case is now before us for our independent review of the record.  *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988).

{¶ 7}   Jones's counsel's sole potential assignment of error asserts that Jones's conviction was based on insufficient evidence and was against the manifest weight of the evidence.  "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law."  *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  When reviewing whether the State has presented sufficient evidence to support a

conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 8} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 ("'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 9} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.* The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence.

*Wilso*n at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶ 10} The State's evidence established that at 4:20 p.m. on October 30, 2011, Annie Tyree, along with her nine-year-old foster child, went to the drive-through ATM at First Financial Bank at 4801 North Main Street in Harrison Township. As Tyree obtained cash from the ATM, a man in a black jacket and a black mask over the lower portion of his face came along the passenger side of the car. He opened the front passenger door (where the child was seated), pointed a gun inside the car, and told Tyree to give him the money. A second man in a Halloween-type mask stood near the back of the car. Tyree saw only the man with the gun; the child saw both men. Tyree "hit the gas" and drove onto the street. Tyree then went back into the bank parking lot and called 911. A camera at the bank recorded a video of the events at the ATM.

{¶ 11} As Tyree and the child waited for the police, they saw two individuals with the same clothes as the perpetrators (along with a third person) walking back and forth from the bus stop across the street to Walgreens. The group went into a nearby apartment complex.

{¶ 12} Montgomery County Sheriff's Deputy Justin Bone was at the Speedway gas station nearly across the street from the bank when he was dispatched on a report of an aggravated robbery at 4801 North Main Street. The dispatch, sent at 4:29 p.m., indicated that two to possibly three males wearing black jackets and brown jackets were running behind the Walgreens. Bone looked over toward the Walgreens and saw two or three

individuals walking toward an apartment complex; he could see a black jacket and a brown jacket. Bone got into his cruiser, activated his emergency lighting, and drove into the complex. The three individuals started running, and the deputy lost sight of them.

{¶ 13} Deputy Bone drove past the three buildings in the complex, but did not see the men. He parked by the entrance and began looking on foot. He discovered a black face mask in the grass by the front entrance. Bone soon found one individual in a brown jacket in one of the breezeways between the buildings; two other individuals, including a man in a black jacket, were nearby. Bone apprehended the man in the brown jacket (later identified as Raymond Farrell), and ordered the other two (later identified as Jones and Quwan Lipsey) to get on the ground. Jones and Lipsey walked away, and Bone advised dispatch that the two other individuals were heading south through the apartment complex. At 4:35 p.m., approximately six minutes after the aggravated robbery, Bone advised dispatch that he had Farrell in custody. A purplish-gray Halloween mask was found in Farrell's left inside pocket.

{¶ 14} Deputy Fred Zollers responded to the apartment complex and saw Deputy Bone in the process of detaining Farrell. Zollers exited his cruiser, and Bone yelled to him that two individuals were heading south. Deputy Zollers drove south through the complex and observed two individuals (Jones and Lipsey) matching the descriptions provided by Bone. Zollers stopped them and ordered them to the ground. Deputy Adams arrived and assisted Zollers in detaining them. Jones's clothing matched the clothing of the individual who brandished the gun on the ATM video.

{¶ 15} Deputy Aucherman drove Tyree and the child to the apartment complex to

look at the detained individuals. Tyree immediately identified Jones as the man who had opened the passenger door with a gun; she did not recognize Lipsey. At trial, Tyree also identified Jones as the man who stuck a gun in her vehicle at the bank. The child told the deputy and testified at trial that Farrell's Halloween mask matched the mask that the second man had worn at the ATM. The child testified at trial that, when he was at the apartment complex, he also recognized Jones as one of the two men from the bank. He stated that the police did not ask him to make an identification at the apartment complex.

{¶ 16} DNA was obtained from the nose and mouth area of the black face mask, as well as the cheek area of that mask. The State's DNA expert testified that Jones's DNA was excluded from both parts of the mask; Lipsey's DNA, however, could not be excluded as a possible contributor to the mixture from the nose and mouth area of the face mask.

{¶ 17} Jones did not present any witnesses. However, his counsel emphasized during closing arguments the inconsistencies about the reported color of the jackets worn by the perpetrators and the color of the face mask worn by the individual with the gun. Tyree's written statement to the police reported that the man with a gun wore a brown jacket and a red mask; the child described the man's mask as red and black. Farrell was wearing a brown jacket, but the child stated that the second man's jacket was tan. Jones's counsel further emphasized that Jones's DNA was not located on the face mask and, in fact, was excluded.

{¶ 18} Upon review of the trial transcript, we agree with Jones's appellate counsel that there is no arguable issue that Jones's conviction was based on insufficient evidence and was against the manifest weight of the evidence. Jones was apprehended

shortly after the aggravated robbery took place. He was wearing the same clothing as the perpetrator on the bank video, and he was identified by Tyree and the child as the man who opened the passenger door, pointed a gun inside, and demanded money. Although there were some discrepancies between the complainant's description of the perpetrator's clothing and Jones's clothing, the bank video and other evidence supported the jury's conclusion that Jones had committed the offense.

{¶ 19}  We have independently reviewed the entire record, including the suppression hearing transcript, the trial transcript, and the sentencing transcript, and we agree with Jones's counsel that there are no potentially meritorious issues for review. The trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Carley J. Ingram
Daniel E. Brinkman
James C. Jones, II
Hon. Steven K. Dankof