[Cite as *In re K.M.*, 2014-Ohio-5802.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

IN RE:


K.M., T.T., X.T., T.T.


Appellate Case No. 26308

Trial Court Case Nos. 2005-001366
                      2011-002620
                      2011-002621
                      2012-000471
(Juvenile Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the _____31st_____ day of _____December_____, 2014.

. . . . . . . . . . .


MATHIAS H. HECK, JR., by TIFFANY C. ALLEN, Atty. Reg. #0089369, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

JEAN STEIGERWALD, Atty. Reg. 0036741, Post Office Box 373, Dayton, Ohio 45409
        Attorney for Appellant Mother E.M.

D. JASON HALSEY, Atty. Reg. #0091643, 120 West Second Street, Suite 1420, Dayton, Ohio 45402
        Attorney for Appellant Father C.T.

. . . . . . . . . . . . .

FAIN, J.

**{¶ 1}** Appellants E.M. and C.T. appeal from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, terminating their parental rights with respect to their natural children, T.T., X.T., and T.T.[1] E.M. also appeals with regard to her other child, K.M. They contend that the evidence does not support a finding that awarding custody to Montgomery County Children Services (MCCS) is in the best interest of the children. They also argue, with regard to T.T.2, that the evidence does not support a finding that she could not be returned to them within a reasonable time.

**{¶ 2}** We conclude that there is competent, credible evidence in the record from which the trial court could find that it is in the best interest of the children to award custody to MCCS. We further conclude that there is sufficient evidence in the record from which the trial court could find that T.T.2 cannot be returned to the parents within a reasonable time. Accordingly, the judgment of the trial court is Affirmed.

## I. The Involvement of MCCS with the Appellants' Family

**{¶ 3}** E.M. is the natural mother of K.M., T.T., X.T. and T.T.2. C.T. is the natural father of all the children except K.M. MCCS became involved with this family in 2005 when temporary custody of K.M. was granted to MCCS, due to concerns regarding housing and income. K.M. was returned to E.M.'s care approximately four months later.

**{¶ 4}** T.T. was born in 2008, and X.T. was born in 2009. Temporary custody of the

---

[1] For ease of reference we will refer to the youngest child as T.T.2.

three children was granted to MCCS in May 2011, due to concerns regarding domestic violence and poor housing conditions. T.T.2 was born in January 2012. Temporary custody of this child was given to MCCS, due to concerns regarding substance abuse, lack of stable housing and lack of income.

{¶ 5} MCCS moved for permanent custody of all four children in March 2013. Following a hearing, a magistrate entered a decision granting permanent custody of the children to MCCS. Both E.M. and C.T. objected. The trial court overruled all objections and adopted the decision of the magistrate as its judgment..

{¶ 6} E.M. and C.T. appeal.

## II. Evidence in the Record Supports the Trial Court's Finding that the Award of Custody of the Four Children to MCCS Is in their Best Interest

{¶ 7} E.M.'s First Assignment of Error states:

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO MONTGOMERY COUNTY CHILDREN SERVICES BECAUSE MONTGOMERY COUNTY CHILDREN SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN AT ISSUE IN THIS APPEAL.

{¶ 8} R.C. 2151.414(B)(2) and (E)(1) and (4) provide that a trial court shall award permanent custody if it finds that permanent custody is in the child's best interest and the child has been in the temporary custody of one or more public children services agencies or private

child placing agencies for twelve or more months of a consecutive twenty-two-month period. R.C. 2151.414(B)(1)(d). In the case before us, there is no dispute that K.M., T.T., and X.T. were in the custody of MCCS for more than twelve months out of a consecutive twenty-two-month period. Thus, the trial court was required only to consider whether a grant of permanent custody was in the best interest of those children

{¶ 9} Pursuant to R.C. 2151.414(D), when considering the best interest of the child, the court must consider all relevant factors, including the following:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, * * *;

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. R.C. 2151.414(D).

{¶ 10} K.M. was placed in a residential treatment facility due to a diagnosis of Oppositional Defiant Disorder, Attention Deficit Hyperactivity Disorder, Anxiety Disorder, and Post-Traumatic Stress Disorder. Approximately one month prior to the hearing, she was discharged from the residential facility and placed in a foster home. She continues to receive weekly therapy.

{¶ 11} K.M., who was ten at the time of the hearing, has "expressed anger issues

toward her mother." Tr., p. 13. She told her counselor that "the house was frequently dirty. She was kind of tired of the fighting and partying that was going on. She kind of felt like she had to be more mature than what her age actually was, and she wanted her parents to mature in that sense." *Id.* E.M. did not visit K.M. while she was in the residential facility, and only spoke with her via telephone approximately five times during K.M.'s ten-month stay there. All of the telephone calls were initiated by K.M.'s counselor. The record does not reflect any bonding between E.M. and K.M. Further, K.M. has no relationship with her biological father, who is incarcerated.

{¶ 12} K.M. informed the GAL that she wanted to remain with her current foster family. The evidence shows that she is doing well, and that she is bonding with the foster family. The Guardian Ad Litem appointed to represent the children recommended that custody be awarded to MCCS.

{¶ 13} T.T. and X.T. have resided in the same foster home during the pendency of the case.[2] The children are bonded with their foster family, and have adjusted well to their environment. With regard to T.T., X.T. and T.T.2, both parents are appropriate and loving with the children, and have been consistent in their weekly visitations which occur once a week at the agency facilities. E.M. and C.T. have expressed the desire to be reunited with the children. However, again, the GAL appointed to represent the children recommended that permanent custody be granted to the agency.

{¶ 14} While it is not clear from this record that the current foster families are willing to adopt the children, there is evidence that the children are adoptable. The record demonstrates

---

[2] T.T.2 is also in this home.

that there are no relatives or friends willing or able to take the children.

{¶ 15} Neither E.M. nor C.T. completed their case plans. At the time of the hearing, they were living in a two-bedroom apartment at the DeSoto Bass Apartment Complex. The apartment is clean and has working utilities. The complex requires that all persons over the age of 18 living in the apartment execute a lease. E.M. testified that C.T. was not able to be placed on the lease for the apartment due to his criminal history involving a felony conviction. There is evidence that they are at risk of eviction because C.T. resides in the apartment without being a party to the lease. E.M. admitted that she would prefer to have another bedroom, and stated that the housing was stable "to a certain extent." Tr., p. 87. C.T. testified that the complex management knew he was residing in the apartment, because they had been in the apartment "four or five times" while he was there, and there were no plans to evict. *Id.*, p. 106.

{¶ 16} The trial court found that this portion of the case plan was not complete, because E.M. and C.T. did not have stable housing; they were in danger of eviction. The court was not required to accept C.T.'s testimony that management was aware he was residing in the apartment; a court is free to credit all, some, or none of a witness's testimony. Furthermore, we conclude that C.T.'s testimony establishes, at best, that the management observed him in the apartment; it does not establish that management was aware he was residing there. The trial court also did not abuse its discretion by determining that the apartment did not have adequate space for two adults and four children.[3] Thus, we conclude that there is credible, competent evidence in the record to support a finding that this part of the case plan was incomplete.

{¶ 17} Neither parent completed the portion of the case plan requiring them to obtain,

---

[3] The evidence shows that E.M. and C.T. also have another child, who is the subject of a different case.

and maintain, employment. At the time of the hearing, neither parent was employed. E.M. had not been employed since 2011. C.T. worked for approximately one month in 2012. He had a job beginning in April 2013 that lasted less than two months. C.T. testified that he and E.M. were relying on the monies received by E.M. for donating blood as their source of revenue. He testified that he was due to start orientation for a new job the week after the hearing. He testified that he filled out an application for part-time employment with a retirement home, where he would be giving medications, checking residents' vital signs, and aiding in rehabilitation. He testified that he believed he had been hired due to the fact that he was attending an orientation session, but he presented no verification of that employment. He admitted that he did not have a current certification for his medical assistant license, which was required for the position. We note that at a prior hearing, C.T. had testified that he had gained employment that was to begin immediately following the hearing; however, that job did not materialize. Again, the trial court was free to give little, or no, credit to C.T.'s claim that he had gained employment.

{¶ 18} During the course of the agency's involvement, E.M. admitted to using marijuana. Her case plan was amended to require her to remain sober for six months and to complete a drug program. The evidence demonstrates that she failed to do either. Her attendance in the program was sporadic, and she had not completed the program at the time of the hearing. She complains that the magistrate and trial court took improper notice of drug screens taken during the time she did attend the treatment program.

{¶ 19} We note that during the hearing the magistrate sustained her objections to testimony regarding those drug screens. The trial court, in ruling on the objections, took note of those screens. However, even if this was error, we find it harmless. There is evidence in the

record that E.M. tested positive for marijuana when she gave birth to her fifth child in March 2013. She also testified positive on a court-ordered drug screen administered June 17, 2013, just two months before the hearing. And she admitted during her testimony that she tested positive on screens taken during the treatment program.

{¶ 20} C.T. complains that the magistrate erred by stating that the agency was concerned about both his and E.M.'s chronic use of marijuana. We agree that there is no evidence that C.T. is a chronic user of marijuana. But the trial court ordered a drug screen of C.T. on June 17, 2013, which was positive for marijuana. While this did not establish chronic use, it is evidence of drug use. Even if the magistrate erred by using the term chronic use, we conclude that the error was harmless – the trial court did not address C.T.'s drug use in its decision.

{¶ 21} "The manifest-weight-of-the-evidence standard of appellate review set forth in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), applies in both criminal and civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17–23." *Mathews v. Mathews*, 2d Dist. Clark No. 2012-CA-79, 2013-Ohio-2471, ¶ 9.

{¶ 22} This court has stated that "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Jones*, 2d Dist. Montgomery No. 25724, 2014-Ohio-2309, ¶ 8 - 9, citations omitted. "When evaluating whether a [judgment] is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' "

*Id.*, quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶ 23} Because the trier of fact sees and hears the witnesses at trial, we must extend deference to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we extend less deference in weighing competing inferences suggested by the evidence. *Id*. The fact that the evidence is subject to differing interpretations does not render the judgment against the manifest weight of the evidence. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 14. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶ 24} We conclude that the trial court did not err in finding that the best interest of the children was served by granting custody to the agency. Due to their failure to complete their case plans, the parents failed to remedy the issues that caused the removal of the children from the home. While the parents love their children, they are not in a position to take adequate care of them. We conclude that the trial court did not abuse its discretion in finding that the children's need for a legally secure permanent placement cannot be achieved without a grant of permanent custody to MCCS.

{¶ 25} E.M.'s First Assignment of Error is overruled.

**III. The Trial Court's Finding that T.T.2 Could Not Be Placed with Either**

**Parent within a Reasonable Time Is Supported by Sufficient Evidence**

{¶ 26} E.M.'s Second Assignment of Error states as follows:

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF THE CHILD T.T.[2] (FEMALE) BECAUSE MONTGOMERY COUNTY CHILDREN SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THIS CHILD COULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH APPELLANT.

{¶ 27}    Pursuant to R.C. 2151.414(B)(1)(a), the court may grant permanent custody of a child to the agency if the court determines, by clear and convincing evidence, that (1) it is in the best interest of the child to grant permanent custody of the child to the children services agency, (2) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and (3) the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶ 28}    In evaluating whether a child can be placed with either parent within a reasonable time, a trial court must comply with R.C. 2151.414(E) which provides, in pertinent part, as follows:

In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child

cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 29} The parents failed to comply with their case plans, despite evidence that MCCS made appropriate referrals for both of them. They did not have adequate housing. E.M. was not employed. Her source of income is donating blood. While C.T. claimed that he did secure employment, he failed to provide any verification thereof. Furthermore, E.M. failed to complete her drug treatment or to maintain sobriety. Also, while there is no evidence that C.T. is a chronic marijuana user, the fact that he tested positive for marijuana just two months prior to the hearing is evidence that the trial court could consider.

{¶ 30} Based upon the evidence in the record, we conclude that the trial court did not abuse its discretion in finding that T.T.2 could not, or should not, be returned to the parents. E.M.'s Second Assignment of Error is overruled.

**IV.   Similarly, the Father's Assignments of Error Are without Merit**

{¶ 31}   C.T.'s First, Second, and Third Assignments of Error state:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT FACTORS EXISTED THAT PRECLUDED THE PLACEMENT OF [T.T.2] WITH THE APPELLANT WITHIN A REASONABLE TIME AS THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT IT WAS IN THE BEST INTEREST OF THE CHILDREN TO GRANT PERMANENT CUSTODY TO MONTGOMERY COUNTY CHILDREN SERVICES AS THAT DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING PERMANENT CUSTODY OF THE SAID CHILD TO MONTGOMERY COUNTY CHILDREN SERVICES AS THAT DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 32}   C.T.'s arguments are similar to those raised by E.M.   He argues that the decision of the trial court is not supported by the weight of the evidence.

{¶ 33}   An examination of the record, as set forth above, leads us to conclude that the trial court's decision is supported by competent and credible evidence.   As stated before, both C.T. and E.M. failed to complete their case plans.   Thus, not only could T.T.2 not be returned to

the parents, but the best interests of all the children dictate that custody be awarded to the agency.

This is not the rare case where the finder of fact lost its way, creating a manifest injustice.

**{¶ 34}** All of C.T.'s assignments of error are overruled.

## V. Conclusion

**{¶ 35}** All of E.M.'s and C.T.'s assignments of error having been overruled, the

judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN, J., and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Tiffany C. Allen
Jean M. Steigerwald
D. Jason Halsey
Hon. Nick Kuntz