[Cite as *State v. Moore*, 2019-Ohio-1804.]


IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28094 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-1524 |
| | : | |
| TYRONE MOORE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of May, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ANDREW C. SCHLUETER, Atty. Reg. No. 0086701, P.O. Box 96, Xenia, Ohio 45385
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .


DONOVAN, J.

{¶ 1} Defendant-appellant Tyrone Moore appeals his conviction for one count of failure to comply with the order or signal of a police officer (serious physical harm/substantial risk), in violation of R.C. 2921.331(B) and (C)(5), a felony of the third degree; and one count of obstructing official business, in violation of R.C. 2921.31(A), a misdemeanor of the second degree.   Moore filed a timely notice of appeal with this Court on August 19, 2018.

{¶ 2} The incident which forms the basis for the Moore's conviction occurred on April 17, 2018, at approximately 5:45 p.m. when Dayton Police Department Detectives Melissa Boyes and Elizabeth Whitney observed a tall heavyset black male with dreadlocks exit a residence located near North Cherrywood and Radio Roads in Dayton, Ohio.   After leaving the residence, the unidentified male got into a black Chevy Tahoe that was parked nearby and drove away.   Detective Whitney testified that as the Tahoe passed her vehicle, she was able to observe that the driver was the same tall heavyset black male that she had just observed leave the residence and enter the Tahoe.

{¶ 3} Detective Boyes and Whitney were acting in an undercover capacity on the day in question.   Therefore, the detectives were driving an unmarked police vehicle and wearing civilian dress.   Detective Boyes observed that the Tahoe's windows were tinted very dark so as to constitute a traffic violation.   In order to maintain her and Detective Whitney's undercover status, Detective Boyes contacted Dayton Police Officers Eric Miller and Kevin Johnson who were patrolling nearby in a marked police cruiser, informed them of the Tahoe's probable window tint violation, and advised the officers to initiate a traffic stop of the vehicle.

{¶ 4} Officers Miller and Johnson observed the Tahoe being driven near 261 North Garland Street. Officer Miller pulled his cruiser behind the Tahoe and activated his overhead lights. Officer Johnson exited the cruiser and approached the Tahoe on the passenger side. Before Officer Johnson could reach the vehicle and speak with its occupants, the driver fled south on North Garland Street at a high rate of speed. Pursuant to department policy regarding densely populated residential areas, Officers Miller and Johnson did not pursue the fleeing vehicle. Neither Officer Miller nor Officer Johnson were able to identify the driver of the vehicle.

{¶ 5} Thereafter, at the intersection of North Garland Street and East Third Street, the Tahoe collided with a truck driven by Michael Newbauer. Detective Boyes witnessed the accident from her unmarked police vehicle. As a result of the collision, Newbauer sustained facial injuries, a fractured sternum, spinal injuries, and a broken rib. Newbauer was unable to identify the driver of the vehicle.

{¶ 6} Detective Boyes testified that immediately after the accident, she observed an individual exit the vehicle from the front passenger side and run away. Detective Boyes testified that the individual was black, of medium build, had braided hair, wearing dark clothing and a tan jacket with rhinestones on the back. Detective Boyes testified that she quickly apprehended the individual, who was later identified as Ebony Owensby. Detective Boyes testified that Owensby appeared dazed and confused and stated that she "did not know what was going on and * * * that she was just riding in the car."

{¶ 7} Detective Whitney testified that she observed a heavier-set black male with dreadlocks exit from the driver's door of the Tahoe and run away. Detective Whitney further described the individual as tall, wearing dark clothes, a hat, and a tan jacket.

Detective Whitney testified that individual was the same man she observed earlier who walked out of the residence located near North Cherrywood and Radio Roads, entered the Tahoe, and drove past her and Detective Boyes.  Shortly thereafter, an individual, later identified as Moore and matching this description, was apprehended nearby by Detective Lucas Rose.  Detective Rose testified that Moore was wearing dark clothing, a hat, was approximately six feet tall, and had a heavy build.  Owensby and Moore were arrested and taken into custody.

{¶ 8} On May 15, 2018, Moore was indicted for one count of failure to comply with the order or signal of a police officer and one count of obstructing official business.  At his arraignment on May 17, 2018, Moore stood mute, and the trial court entered a plea of not guilty on his behalf.

{¶ 9} After a three-day jury trial that ended on July 19, 2018, Moore was found guilty of both counts in the indictment.  On August 7, 2018, Moore was sentenced to 30 months in prison for failure to comply with the order or signal of a police officer and to 90 days in jail for obstructing official business.  The trial court ordered that the sentences be served concurrently.

{¶ 10} It is from this judgment that Moore now appeals.

{¶ 11} Moore's first assignment of error is as follows:

APPELLANT'S CONVICTION FOR FAILURE TO COMPLY WITH THE ORDER OR SIGNAL OF A POLICE OFFICER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} In his first assignment, Moore contends that his conviction for failure to comply with the order or signal of a police officer was against the manifest weight of the

evidence.   Specifically, Moore argues that his conviction was not supported by the weight of the evidence because Detective Whitney's testimony identifying him as the driver of the Tahoe was not credible.

{¶ 13} "The manifest-weight-of-the-evidence standard of appellate review set forth in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), applies in both criminal and civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17-23." *Mathews v. Mathews*, 2d Dist. Clark No. 2012-CA-79, 2013-Ohio-2471, ¶ 9.

{¶ 14} This court has stated that "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citations omitted). *State v. Jones*, 2d Dist. Montgomery No. 25724, 2014-Ohio-2309, ¶ 8.   "When evaluating whether a [judgment] is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *Thompkins* at 387.

{¶ 15} Because the trier of fact sees and hears the witnesses at trial, we must extend deference to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).   However, we extend less deference in weighing competing inferences suggested by the evidence. *Id.*   The fact that the evidence is subject to differing interpretations does not render the judgment against the manifest weight of the

evidence. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 14. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 16} As previously stated, Detective Whitney testified that, as the Tahoe passed her unmarked vehicle, she was able to observe that the driver was the same tall heavyset black male that she had just observed leave the residence and enter the Tahoe. After the car accident with the Tahoe and Newbauer's truck, she observed the same individual, later identified as Moore, exit from the driver's door of the Tahoe and run away. Detective Whitney further described Moore as being tall, wearing dark clothes, a hat, and a tan jacket. Shortly thereafter, an individual matching this description was apprehended nearby by Detective Lucas Rose. Corroborating Detective's Whitney's testimony, Detective Rose testified that Moore was wearing dark clothing, a hat, was approximately six feet tall, and had a heavy build.

{¶ 17} Thus, having reviewed the record, we find no merit in Moore's manifest weight challenge. It is well settled that evaluating witness credibility is primarily for the trier of fact. *State v. Brown*, 2d Dist. Montgomery No. 27571, 2018-Ohio-3294; *see also State v. Benton*, 2d Dist. Miami No. 2010-CA-27, 2012-Ohio-4080, ¶ 7. A trier of fact does not lose its way and create a manifest miscarriage of justice if its resolution of conflicting testimony is reasonable. *Id.* Here, the jury quite reasonably could have credited the State's evidence, which established that Moore was guilty of the offenses for which he was convicted. Accordingly, the jury did not lose its way and create a manifest miscarriage of justice in reaching a guilty verdict for failure to comply with the order or

signal of a police officer.

{¶ 18} Moore's first assignment of error is overruled.

{¶ 19} Moore's second and final assignment of error is as follows:

THE TRIAL COURT DENIED APPELLANT DUE PROCESS OF LAW WHEN IT INTERFERED WITH HIS FUNDAMENTAL AND PERSONAL RIGHT TO TESTIFY IN HIS OWN DEFENSE.

{¶ 20} In his second assignment, Moore argues that the trial court violated his due process rights by interfering with his right to testify in his own defense when it conducted an inquiry regarding whether he intended to testify at trial.

{¶ 21} After the State rested its case, defense counsel stated that he had spoken to Moore regarding whether he wanted to testify on his own behalf. Defense counsel indicated that Moore had decided not to testify. Thereafter, the following exchange occurred:

Defense Counsel: For the record – * * * For the record, I would note that I conversed with my client about him testifying and he's made the decision not to offer testimony in this case.

* * *

Trial Court: One thing I do with every person in front of me for a trial is I directly inquire upon him or her whether or not it is your wish to testify or not testify, as that right is yours and yours alone. And so, with that, you've heard the statements of your attorney. You have heard my statements throughout the course of the trial and throughout different dockets in which I delineated your right to testify, to take the stand or not take the stand, as

our choice is. Either way, no matter what that choice is, that choice can never be used against you. Do you understand that?

Moore: Yes, sir.

Q: Is it your wish to take the stand or not to take the stand today?

A: I mean, well – yeah, I'll testify.

Q: Mr. Moore, what I'm asking is not – I'm not trying to convince you to testify in any way.

A: No, I want to prove my innocence. I want to prove that I'm innocent. That's why I want to testify.

Q: Mr. Moore, when I make these comments, it's to determine that it's your free will and voluntary choice not to testify. You may wish to take advice or counsel from [defense counsel] and I will note for the record that that if you elect to testify, then your testimony will not only be subject to the direct examination by your attorney, but also to any cross-examination by the State's attorneys. Do you understand?

A: Yes.

Q: All right. Why don't you take a moment to discuss with your counsel and we'll return to the matter.

A: Yes, sir.

* * *

Q: All right. Mr. Moore, you've had an opportunity to converse with your counsel?

A: Yes, sir.

Q: At this time, I'll ask you again.   Is it your wish to testify or not to testify?

A: No, I do not want to testify.

Q: I'm sorry.

A: I do not want to testify.

Q: All right, sir.   Has anyone forced or threatened you to get you to make that opinion?

A: No, sir.

Q: Is that your free and voluntary choice?

A: Yes, sir.

Tr. pp. 418-419, 425.

**{¶ 22}** Moore argues that when he informed the trial court that he wanted to testify in order to prove his innocence, the trial court should have immediately ceased any further inquiries and allowed him to testify.   By directing Moore to confer with his counsel about whether to testify, Moore argues that the trial court unconstitutionally "hinder[ed] [his] ability to present an affirmative case of innocence," thereby denying him due process of law.

**{¶ 23}** In support of his argument that the trial court should not have conducted an inquiry, Moore cites to *State v. Bey*, 85 Ohio St.3d 487, 709 N.E.2d 484 (1999).   In *Bey*, the Ohio Supreme Court rejected the claim that a trial court must inform a defendant of his right to testify at trial. *Id.* at 499.   *Bey* further held that a trial court is not required to inquire whether the defendant's waiver of that right was done knowingly and intelligently. *Id.*   *Bey* added that such an inquiry might be harmful because it " 'places the judge

between the lawyer and his client and can produce confusion as well as delay.' " *Id.*, quoting *People v. Curtis*, 681 P.2d 504, 519 (Colo.1984) (Erickson, C.J., concurring). *Bey* also stated that such "questioning can lead into the judge's evaluation of the wisdom of the defendant's decision, the substance of the testimony, or simply evoke a dramatic change in a previously carefully considered trial strategy." *Id.* However, "*Bey* does not prohibit the court's questioning of a defendant." *State v. Powell*, 132 Ohio St.3d 233, 971 N.E.2d 865, 2012-Ohio-2577, ¶ 100. Accordingly, Moore's reliance on *Bey* is misplaced.

{¶ 24} In the instant case, defense counsel had just informed the trial court that Moore was not going to testify. Thereafter, when Moore indicated that he had changed his mind and wanted to testify, it was not unreasonable for the trial court to ascertain whether Moore was waiving his right *not* to testify in a knowing, voluntary, and intelligent fashion. Furthermore, given Moore's apparent last-minute change of heart regarding his decision to testify on his own behalf, the trial court reasonably provided Moore with additional time to confer with his counsel before proceeding. Other than informing Moore that he would be subject to direct and cross-examination if he chose to testify, the trial court avoided any attempt to counsel Moore or his attorney on how he should proceed. Upon review, we conclude that the trial court did not violate Moore's due process rights when it conducted an inquiry regarding whether he intended to testify at trial.

{¶ 25} Moore's second assignment of error is overruled.

{¶ 26} Both of Moore's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

WELBAUM, P.J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Andrew C. Schlueter
Hon. Gerald Parker