**[Cite as *State v. Mott*, 2020-Ohio-598.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-41 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-630 |
| | : | |
| JACOB MOTT | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of February, 2020.

. . . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

JON PAUL RION, Atty. Reg. No. 0067020 and CATHERINE H. BREAULT, Atty. Reg. No. 0098433, 130 West Second Street, Suite 2150, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Jacob Mott appeals his conviction for one count of felonious assault, in violation of R.C. 2903.11(A)(2), a felony of the second degree. Mott filed a timely notice of appeal with this Court on May 24, 2019.

{¶ 2} The incident which formed the basis for Mott's conviction occurred in the early morning hours of September 16, 2018, when the victim, Cody Riley, was out with friends visiting local bars in Springfield, Ohio. The group of men, including Riley, eventually went to a bar named Che's Rustic Lounge on Bechtel Avenue in Springfield. At Che's, Riley came into contact with Mott. Although the two men had not seen each other in years, Riley and Mott were engaged in an ongoing dispute dating back to their time in high school. The dispute involved money, stolen drugs, and a pair of expensive sneakers.

{¶ 3} Riley testified that, prior to last call at the bar, Mott approached him and asked him, "How's it going, buddy?" Tr. 102. Riley testified that he informed Mott that they were not friends and to leave him alone. Mott left at that point, but approximately 15 minutes later, he returned and asked Riley to buy him a beer. Riley refused, and the two men then engaged in a verbal altercation with Mott demanding that they fight. Although disputed by Mott, Riley testified that they were subsequently thrown out of the bar.

{¶ 4} After being ejected from the bar, Mott invited Riley to meet him at his house so they could fight. Mott then sent Riley a text message containing the address of his residence in Springfield. Traveling in two vehicles, Riley and his friends drove to the address provided by Mott and parked down the street a short distance from Mott's residence. Mott testified that the two vehicles containing Riley and his friends were parked at the end of his driveway. Shortly after Riley arrived, Mott arrived in a vehicle

driven by his ex-girlfriend, Megan Hawk, who parked the car in Mott's driveway. Mott alleges that another individual, Dillon Peterson, was present in the vehicle with him and Hawk. As soon as Mott exited the vehicle, Hawk backed the vehicle out of the driveway and drove away from the scene. At trial, Mott testified that Hawk did not drive away as he earlier told police, but that she and Peterson remained in the parked vehicle in his driveway during the subsequent events.

{¶ 5} In his interview with police, Mott stated that after he exited the vehicle, he went inside his house, retrieved a .38 caliber revolver, and walked back outside to confront Riley. At trial, however, Mott testified that he never went back into his house to retrieve the revolver. Rather, he testified that before exiting the vehicle driven by Hawk, he retrieved the revolver from the glovebox inside the vehicle and then got out and walked towards Riley, who was standing at the end of the driveway unarmed. Riley testified that Mott had pulled the hammer back on the revolver as he approached. Mott then pointed the revolver at Riley's head stating, "You don't think I'll do it." Tr. 109. At that point, Mott began tapping the barrel of the revolver against Riley's forehead, backing him up toward the street. Fearing for his life, Riley attempted to take the gun away from Mott, but was unable to do so. Mott then backed up a step and shot Riley in the abdomen. The round fired by Mott was later found to have pierced Riley's abdomen, passed through his gall bladder and large intestine, and lodged itself in Riley's right buttock. At trial, Mott testified that he did not intentionally shoot Riley in the abdomen. Rather, Mott claimed that as he and Riley were struggling for control of the revolver, the two men fell to the ground, and the gun went off accidentally.

{¶ 6} One of Riley's friends, Derrick Delawder, exited his vehicle, picked Riley up

where he was lying in the grass next to Mott's driveway, and transported him to Springfield Regional Medical Center. Delawder testified that he observed Riley try unsuccessfully to take the gun from Mott. Delawder testified that he then observed Mott step back, aim the revolver at Riley's torso, and shoot him in the abdomen, contrary to Mott's testimony that the gun accidentally discharged during a struggle.

{¶ 7} Riley was eventually flown by Care Flight helicopter to Miami Valley Hospital where he received emergency surgery. Riley survived the surgery, but doctors were forced to remove his gall bladder and a section of his large intestine. At the time of the trial, the bullet still remained lodged in Riley's right buttock. After shooting Riley, Mott walked back to his house and went inside; he was located there when the police arrived. Mott was arrested and taken into custody. The revolver used in the shooting was later recovered by the police in a ravine in the woods near Mott's residence.

{¶ 8} On September 24, 2018, Mott was indicted for one count felonious assault (deadly weapon), accompanied by a three-year gun specification. Mott pled not guilty to the charged offense.

{¶ 9} A jury trial was held on May 14, 2019, and the jury found Mott guilty of felonious assault, and the attached gun specification. On May 17, 2019, the trial court sentenced Mott to six years in prison for the felonious assault and a mandatory consecutive three years for the gun specification, for an aggregate sentence of nine years.

{¶ 10} It is from this judgment that Mott now appeals.

{¶ 11} Mott's first assignment of error is as follows:

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO SUBPOENA

THE DEFENSE WITNESSES.

{¶ 12} In his first assignment, Mott contends that his trial counsel was ineffective for failing to subpoena two of the witnesses named on his witness list, Megan Hawk and Dillon Peterson. Mott argues that Hawk and Peterson were present during the shooting and could have provided exculpatory testimony in support of Mott's accident defense.

{¶ 13} As this Court has noted:

We evaluate ineffective assistance of counsel arguments in light of the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To prevail on his claims of ineffective assistance of counsel, [a defendant] must show that counsel's representation fell below an objective standard of reasonableness, and that he was prejudiced by counsel's deficient performance. *Bradley*, at 142.

To establish the first prong of ineffective assistance, there must be "a substantial violation of any of counsel's essential duties to his client. Bradley at 141. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Id. at 142. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. Bradley at 689.

To establish the second prong, prejudice, [a defendant] "must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Strickland at 694.

*State v. Jordan*, 2d Dist. Montgomery No. 27208, 2017-Ohio-7342, ¶ 20-22.

{¶ 14} "A debatable decision involving trial tactics generally does not constitute a deprivation of effective counsel." *State v. Russell*, 2d Dist. Montgomery No. 21458, 2007-Ohio-137, ¶ 50, citing *State v. Phillips*, 74 Ohio St.3d 72, 656 N.E.2d 643 (1995). "Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. * * *." *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 37 (2d Dist.).

{¶ 15} Upon review, we conclude that Mott's contention that counsel should have subpoenaed Hawk and Peterson, who were allegedly in the vehicle parked in his driveway at the time of the shooting, falls short of satisfying his burden on ineffective assistance of counsel. Mott offers no insight into what evidence these witnesses would have provided had they been called to testify, and instead, simply speculates that they "*could have* provided exculpatory testimony in support of [Mott]'s accident defense[.]" (Emphasis added.) Simply put, Mott's argument that Hawk and Peterson should have been subpoenaed to testify rests upon "mere speculation." *See State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 119. "Such speculation is insufficient to establish ineffective assistance." *Id.*, citing *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 217. We cannot assume that Hawk and Peterson would have provided exculpatory testimony supporting Mott's accident defense, as neither witness was subpoenaed, and it is unknown whether defense counsel interviewed them.

Such evidence is outside the record on appeal, and we will not consider it in regard to a claim alleging ineffective assistance. *See State v. Lehman*, 2d Dist. Champaign No. 2014-CA-17, 2015-Ohio-1979, ¶ 10 (it is "well-established that when a claim of ineffective assistance requires the presentation of evidence outside the record, the proper avenue for raising such a claim is through a petition for post-conviction relief rather than on direct appeal").

{¶ 16} Furthermore, the record contains conflicting statements and testimony from Mott regarding whether Peterson and/or Hawk were even present during the shooting. As previously stated, Mott told the police when he was initially interviewed that Hawk drove away and left immediately after dropping him off, before the shooting occurred. At trial, however, he testified that Hawk and Peterson were still in the vehicle parked in his driveway when the shooting occurred. Therefore, the record suggests that Hawk and Peterson may not have been in Mott's driveway to witness the shooting, or the record is, at best, unclear whether they were in a position to observe the shooting as it occurred. Accordingly, we cannot conclude that trial counsel's actions in this regard constituted ineffective assistance, and certainly no prejudice has been established.

{¶ 17} Mott's first assignment of error is overruled.

{¶ 18} Mott's second assignment of error is as follows:

THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN APPELLANT'S CONVICTION UNDER AN ACCIDENT DEFENSE.

{¶ 19} In his second assignment, Mott argues that his conviction for felonious assault was against the manifest weight of the evidence and should therefore be

reversed.

{¶ 20} This court has stated that "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citations omitted). *State v. Jones*, 2d Dist. Montgomery No. 25724, 2014-Ohio-2309, ¶ 8. "When evaluating whether a [judgment] is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 21} Because the trier of fact sees and hears the witnesses at trial, we must extend deference to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). However, we extend less deference in weighing competing inferences suggested by the evidence. *Id.* The fact that the evidence is subject to differing interpretations does not render the judgment against the manifest weight of the evidence. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 14. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 22} As previously stated, Mott initially told the police that, after he exited the vehicle at his residence, he went inside his house, retrieved a .38 caliber revolver, and

walked back outside to confront Riley.   At trial, however, Mott testified that he never went back into his house to retrieve the revolver.   Rather, he testified that before exiting the vehicle driven by Hawk, he retrieved the revolver from the glovebox inside the vehicle and then got out and walked toward Riley, who was standing at the end of the driveway. Riley testified that Mott had pulled the hammer back on the revolver as he approached. Mott tapped the barrel of the revolver against Riley's forehead several times, backing him up toward the street.   Riley testified that he attempted to take the gun away from Mott, but was unsuccessful.   Riley testified that Mott then backed up a step and shot him in the abdomen.   At trial, Mott testified that he did not intentionally shoot Riley in the abdomen.   Rather, Mott claimed that as he and Riley were struggling for control of the revolver, the two men fell to the ground, and the gun went off accidentally.

{¶ 23} Corroborating Riley's testimony, Delawder, who was sitting in a vehicle parked nearby, testified that he observed Riley try unsuccessfully to take the gun from Mott after he pressed the gun against Riley's forehead.   Delawder then observed Mott step back, aim the revolver at Riley's torso, and shoot him in the abdomen.   Delawder testified that he then exited his vehicle, picked Riley up where he was lying in the grass next to Mott's driveway, and transported him to Springfield Regional Medical Center.

{¶ 24} Thus, having reviewed the record, we find no merit in Mott's manifest weight challenge.   It is well settled that evaluating witness credibility is primarily for the trier of fact. *State v. Brown*, 2d Dist. Montgomery No. 27571, 2018-Ohio-3294; *see also State v. Benton*, 2d Dist. Miami No. 2010-CA-27, 2012-Ohio-4080, ¶ 7.   A trier of fact does not lose its way and create a manifest miscarriage of justice if its resolution of conflicting testimony is reasonable. *Id.*   Here, the jury reasonably credited the State's evidence,

which established that Mott was guilty of the offense for which he was convicted. Given the numerous inconsistencies in Mott's trial testimony and his initial statements to police, the jury was free to discredit his claim that the shooting was an accident. Accordingly, the jury did not lose its way and create a manifest miscarriage of justice in reaching a guilty verdict for felonious assault.

{¶ 25} Mott's second assignment of error is overruled.

{¶ 26} Mott's third and final assignment of error is as follows:

THE JUDGMENT OF THE TRIAL COURT SHOULD BE REVERSED BECAUSE THE RECORD DOES NOT CLEARLY AND CONVINCINGLY SUPPORT APPELLANT'S SENTENCE.

{¶ 27} In his final assignment, Mott argues that the trial court erred when it sentenced him to nine years in prison because the record does not clearly and convincingly support his sentence. Initially, we note that if convicted of felonious assault, a felony of the second degree, an offender may be punished by a prison term of two, three, four, five, six, seven, or eight years. R.C. 2929.14(A)(2).

{¶ 28} As this Court has previously noted:

"The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-

Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

*State v. Armstrong*, 2d Dist. Champaign No. 2015-CA-31, 2016-Ohio-5263, ¶ 12.

{¶ 29} R.C. 2929.11 requires trial courts to be guided by the overriding principles of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 30} R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense. These factors include whether the physical or mental injury to the victim was exacerbated because of the physical or mental condition of the victim; serious physical, psychological, or economic harm suffered by the victim as a result of the offense; whether the offender's relationship with the victim facilitated the offense; and whether the offender committed the offense for hire or as a part of an organized criminal activity.

{¶ 31} R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct

is less serious than conduct normally constituting the offense, including whether the victim induced or facilitated the offense, whether the offender acted under strong provocation, whether, in committing the offense, the offender did not cause or expect to cause physical harm to any person or property, and the existence of substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.   R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes.   Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record.

{¶ 32} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9.   Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

{¶ 33} In the instant case, the six-year sentence for the underlying felonious assault imposed by the trial court was well within the permissible statutory range for a conviction for felonious assault, a felony of the second degree.   At disposition, the trial court failed to mention the principles and purposes of sentencing pursuant to R.C. 2929.11 and/or the seriousness and recidivism factors enunciated in R.C. 2929.12.   In Mott's judgment entry of conviction, however, the trial court stated the following:

> The Court considered the record, oral statements of counsel, the defendant's statement, *and the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, and then balanced the*

*seriousness and recidivism factors under Ohio Revised Code Section 2929.12.* The Court also considered the defendant's criminal history. (Emphasis added.) *Id.* at 1.

{¶ 34} This Court has held that a defendant's sentence is not contrary to law when the trial court expressly states in its sentencing entry that it had considered R.C. 2929.11 and R.C. 2929.12, even if the court neglected to mention these statutes at the sentencing hearing. *State v. Battle*, 2d Dist. Clark No.2014 CA 5, 2014-Ohio-4502, ¶ 15, citing *State v. Miller*, 2d Dist. Clark No. 09-CA-28, 2010-Ohio-2138, ¶ 43. Additionally, the trial court stated that, although it did not request a presentence investigation report, it did ask the probation department to perform a criminal record check on Mott, which apparently established that Mott had an adult record containing two unidentified misdemeanors. The trial court also stated that "had the victim died, which was a very real possibility, the defendant would be facing a murder charge and/or conviction, which carries a mandatory life sentence." Sentencing Tr. 5.

{¶ 35} As previously stated, after being shot by Mott, Riley was flown by Care Flight helicopter to Miami Valley Hospital where he underwent emergency surgery. Riley survived the surgery, but doctors were forced to remove his gall bladder and a section of his large intestine. Significantly, at the time of the trial, the bullet still remained lodged in Riley's right buttock.

{¶ 36} Here, the trial court imposed a sentence within the permissible statutory range. The record establishes that the trial court properly reviewed Mott's statements and the statements of counsel. The record further establishes that the trial court considered the principles and purposes of sentencing under R.C. 2929.11, and that it balanced the

seriousness and recidivism factors set forth in R.C. 2929.12. Therefore, we are unable to find "by clear and convincing evidence that the record does not support the sentence." *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 23. The sentence is not contrary to law.

{¶ 37} Mott's final assignment of error is overruled.

{¶ 38} All of Mott's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

John M. Lintz
Jon Paul Rion
Catherine H. Breault
Hon. Douglas M. Rastatter