[Cite as *State v. Norris*, 2018-Ohio-610.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-7 |
| | : | |
| v. | : | Trial Court Case No. 16-CRB-4263 |
| | : | |
| MATTHEW A. NORRIS | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of February, 2018.

. . . . . . . . . .

STACY M. WALL, Atty. Reg. No. 0070114, 201 W. Water Street, Piqua, Ohio 45356
  Attorney for Plaintiff-Appellee

SEAN BRINKMAN, Atty. Reg. No. 0088253, 10 W. Monument Avenue, Dayton, Ohio
45402
  Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

**{¶ 1}** Matthew Norris appeals his conviction for unauthorized use of a vehicle. Finding no error, we affirm.

## I. Background

**{¶ 2}** Norris was charged with unauthorized use of a vehicle under R.C. 2913.03(A), which prohibits a person from using or operating a vehicle "without the consent of the owner or person authorized to give consent." He had been caught using a van belonging to his employer, Hemm's Glass, after he drove home to Miami County one evening from a jobsite in the Cincinnati area and then took his son to school the next morning,[1] both of which violate the employer's written vehicle-use policy. At a bench trial, Norris did not dispute either use. Nor did he dispute that he had received a copy of the vehicle-use policy, which does not allow an employee to drive a company vehicle home and does not allow non-employees to ride in a company vehicle. Rather, Norris sought to establish that he "reasonably believed" he was allowed to use the van for personal matters, an affirmative defense under R.C. 2913.03(C)(1).

**{¶ 3}** The trial court concluded that Norris failed to establish the affirmative defense and found him guilty. The court imposed a 180-day suspended jail sentence and a fine.

**{¶ 4}** Norris appealed.

## II. Analysis

**{¶ 5}** In his sole assignment of error, Norris argues that his conviction is against the manifest weight of the evidence.

---

[1] After dropping off his son, Norris hit a child on a bicycle. The police were called, and Norris was charged.

{¶ 6} "A manifest-weight challenge requires us to consider the entire record, including the credibility of the witnesses, the weight of the evidence, and any reasonable inferences and determine whether ' "the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." ' " *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 75, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). " 'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *Martin* at 175.

{¶ 7} At trial, Norris and several other company employees testified. The testimony shows that Hemm's Glass is based in Piqua, which is also where Norris lived. In October 2016, the company had a job in Cincinnati and Norris was on the work crew. The job was expected to last several months, and the crew would meet in Piqua on Monday mornings and then drive to the jobsite. They would spend the week down there, sleeping in a hotel. Norris was authorized to drive a company van for this job. Randy Kidder was the jobsite foreman, which meant that he ran the work crew and generally oversaw the job. He was Norris's immediate supervisor.

{¶ 8} After work on Monday October 17, Kidder called the crew at the hotel and told them that they would not be needed on the jobsite the next day. He told them that they could either go back to Piqua and work in the shop or stay in the hotel and take the day off. Norris asked Kidder if he could go home for the day. Norris testified that Kidder told him that he could go home but not to do anything stupid and not to get caught. Kidder

denied giving Norris permission to drive home. Kidder testified that he did not have authority to allow an employee to use a company vehicle for personal matters. And he said he told the crew that if they stayed, they were not allowed to use the company vehicles for personal matters. Kidder admitted, though, that he also told Norris especially not to use the company vehicle if he was going to drink.

{¶ 9} Corey Kemp, another crew member, testified that he was in the hotel room when Kidder called and heard Norris ask Kidder if they could go home. Kemp said that Kidder responded, "don't get caught." (Tr. 53). Kemp said that he understood Kidder's response to mean that they had permission to use the company van to drive home on the day off. Kemp also testified that Kidder never told them that they were not allowed to drive the company van outside of work time.

{¶ 10} Norris testified that the crew had used the company vehicles after work before for personal matters. He said that the first time occurred when he first started the job and forgot to bring clothes. So they drove to Goodwill to buy some. Norris said that they drove to Dollar General to buy eating utensils and then to the grocery store to buy food. On another occasion, said Norris, he drove home to Piqua to pick up batteries for his tools, which had been delivered to his house. Kemp testified about personal trips home too. He said that Kidder knew about them because they would tell Kidder that they were going home and would be back for work the next morning. Kemp also said that they sometimes drove the van after work to meet Kidder for dinner or drinks. Kidder testified that the crew was allowed to use the company vehicles for things like getting dinner. This history of using the company vehicles for personal matters, Norris testified, gave him further reason to believe that he had permission to drive the van home.

{¶ 11} The parties stipulated to Hemm's Glass's vehicle-use policy and it was admitted into evidence. Eric Swingle, the Director of Operations at the company, testified that Norris was not authorized to use the company van in Piqua. Swingle said that the van should have been at the job site in Cincinnati. And he testified that, based on his investigation, there was no reason that Norris would have been permitted to drive the company van to his home. Swingle also testified that only company employees are permitted to ride in company vehicles. He said that there is no exception for employees' children.

{¶ 12} The vehicle-use policy and the testimony establish that Norris violated the unauthorized-use-of-a-vehicle statute by driving the company van home "without the consent of the owner or person authorized to give consent." The question is whether the evidence establishes the affirmative defense that Norris "reasonably believed" that he was authorized to drive the van home and to give his son a ride to school. Norris argues that the evidence shows that he had such a reasonable belief, citing the previous uses of company vehicles for personal matters, that Kidder knew about these personal uses, and that Kidder told him he could drive the company van home.

{¶ 13} The trial court found that there was a "wink and a nod" policy about using company vehicles for reasons outside the company's vehicle-use policy. But the court said that it is unclear whether the person who gave the "wink and nod" had the authority to do so. Although Kidder was the jobsite supervisor, said the court, the testimony does not establish that he was responsible for enforcing the vehicle-use policy, though the court acknowledged that he does appear to have been the person in control of the vehicles that were used on the Cincinnati job. The court evidently did not give Kidder's testimony much

weight, calling it "suspect and self-serving." The trial court said that when Kidder told Norris to "go ahead but don't get caught" using the van, he was not giving him permission but was rather warning Norris that using the vehicle was contrary to company policy. The court pointed out that even though the past personal uses of company vehicles about which Norris testified violated a strict reading of the vehicle-use policy, the uses were at least tangentially related to work. Which, said the court, cannot be said of Norris's use here. His use of the company van to drive his son to school, said the court, is a clear violation. The policy expressly prohibits transporting an unauthorized person in a company vehicle.

{¶ 14} "[T]he burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused." R.C. 2901.05(A). The evidence here regarding authorization for use of the vehicle was in dispute. We cannot say that the trial court "clearly lost its way" by failing to accept Norris' contention that he had a reasonable belief that he was authorized to drive the company van to his home. Moreover, we conclude the trial court did not lose its way by finding that Norris did not prove that he had a reasonable belief that he was authorized to use the van to drive his son to school. This is not one of those "exceptional case[s] in which the evidence weighs heavily against conviction."

### III. Conclusion

{¶ 15} The sole assignment of error is overruled. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies mailed to:

Stacy M. Wall
Sean Brinkman
Hon. Gary A. Nasal