**[Cite as *State v. Vaughn*, 2020-Ohio-307.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28409 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-818 |
| | : | |
| ANTHONY VAUGHN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 31st day of January, 2020.

. . . . . . . . . .

H

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

DAVID R. MILES, Atty. Reg. No. 0013841, 1160 East Dayton-Yellow Springs Road, Fairborn, Ohio 45324
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Anthony Vaughn appeals his conviction for one count of robbery (physical harm), in violation of R.C. 2911.02(A)(2), a felony of the second degree. Vaughn filed a timely notice of appeal with this Court on May 22, 2019.

{¶ 2} The incident which formed the basis for the Vaughn's conviction occurred on February 23, 2018, when an adult male, later identified as Vaughn, entered the LCNB Bank located at 2705 Far Hills Avenue in Oakwood, Ohio, and ordered the bank teller, Katherine Hamilton, "to put it all on the table." Tr. 303. When Hamilton hesitated, Vaughn pointed at his right pocket and stated, "it [is] a good day to die." Tr. 304. Hamilton testified that she believed that Vaughn was robbing the bank. Vaughn also ordered the other bank teller present that day, Rebecca Loprete, to give him the cash in her bank drawer. Hamilton testified that she and Loprete took the money out of their drawers, placed the money in a pouch along with an exploding red dye pack, and gave Vaughn the pouch. Oakwood Police Detective Jeffrey Yount, Jr., testified that Vaughn robbed the bank of a total of $5,687 in cash. After Hamilton handed Vaughn the pouch containing the money, he exited the bank and walked to his vehicle, a black Pontiac G6. As Vaughn reached his vehicle, the red dye pack exploded, and he dropped the pouch. Vaughn immediately retrieved the pouch containing the money, got in his vehicle, and drove away.

{¶ 3} On Saturday, February 24, 2018, Vaughn's neighbor in his apartment, Donna Johnson, was watching television when she viewed a surveillance video of the bank robbery released by the press. Johnson testified that after watching the surveillance

video, she believed the man who robbed the bank was her neighbor, Vaughn. However, Johnson testified that she did not contact the police until the following Monday, February 26, 2018, to inform them that Vaughn was the perpetrator of the robbery. We note that Johnson initially called in anonymously to the police when she first informed them of Vaughn's potential involvement in the robbery.

{¶ 4} Once Vaughn became a suspect, Detective Yount created a six-person photospread containing a photograph of Vaughn. Kettering Police Detective David Warren testified that he was asked to serve as a blind administrator of the photospread. Detective Warren testified that he had no prior involvement in the case. Detective Warren showed the photospread to Hamilton and Loprete separately. Detective Warren testified that both women identified Vaughn as the perpetrator of the robbery.

{¶ 5} Based upon the evidence collected up to this point, Detective Yount was able to obtain a search warrant for Vaughn's apartment and his vehicle. Detective Yount testified that, upon execution of the search warrant on February 26, 2018, $1,731.00 was recovered from Vaughn's apartment, in addition to traces of red dye on his clothes and a pouch similar to the one observed in the bank surveillance video. The recovered money also had pink stains on it, and the money appeared as if it had recently been wet and then dried off. Furthermore, traces of red dye were found on Vaughn's vehicle. Forensic scientist Daniel Davidson testified that the red dye found on the money matched the red dye found on Vaughn's vehicle. Vaughn, who was present during the search of his apartment, was arrested and taken into custody.

{¶ 6} On March 8, 2018, Vaughn was indicted for one count of robbery (physical harm). At his arraignment on March 13, 2018, Vaughn pled not guilty. On March 14,

2018, Vaughn was released on his own recognizance after he posted bond in the amount of $10,000.

{¶ 7} On March 22, 2019, Vaughn filed a motion to suppress Hamilton's and Loprete's identifications of him, alleging that the photospread was impermissibly suggestive. Vaughn also sought suppression of any evidence obtained as a result of the search of his vehicle and any statements he had made to police after being taken into custody. A suppression hearing was held on April 12, 2019. On April 22, 2019, the trial court issued a decision overruling Vaughn's motion to suppress in its entirety.

{¶ 8} Vaughn's jury trial began on May 1, 2019, and ended on May 6, 2019, with Vaughn being found guilty of robbery as charged in the indictment. At disposition on May 21, 2019, the trial court sentenced Vaughn to three years in prison. The trial court waived fines and costs but imposed restitution in the amount of $3,553 to LCNB Bank. The trial court also notified Vaughn that he would be subject to three years of post-release control upon his release from prison on this conviction.

{¶ 9} It is from this judgment that Vaughn now appeals.

{¶ 10} Vaughn's first assignment of error is as follows:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION

TO SUPPRESS IDENTIFICATION FROM PHOTOGRAPHS OR A PHOTO

ARRAY LINEUP.

{¶ 11} In his first assignment, Vaughn contends that the trial court erred when it overruled his motion to suppress because the photospread used to identify him was impermissibly suggestive. Specifically, Vaughn argues that the procedures used by Detective Yount in compiling the photospread violated R.C. 2933.83.

{¶ 12} "Due process requires suppression of pre-trial identification of a suspect only if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." *Neil v. Biggers*, 409 U.S. 188, 196-97, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

{¶ 13} The defendant must first show that the identification procedure was unduly suggestive. "A lineup is unduly suggestive if it steers the witness to one suspect, independent of the witness's honest recollection." (Citations omitted.) *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 208. If the pretrial identification procedure was not unfairly suggestive, any remaining questions as to the identification's reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required. *Id.* at ¶ 209; *State v. Williams*, 2d Dist. Montgomery No. 26357, 2015-Ohio-1403, ¶ 13.

{¶ 14} If, on the other hand, the defendant shows that the pretrial identification procedure was unduly suggestive, the court must then consider whether the identification, viewed under the totality of the circumstances, was reliable despite the suggestive procedure. *Id.* In reviewing the likelihood that the circumstances resulted in a misidentification, courts consider the opportunity of the witness to view the perpetrator at the time of the offense, the witness's degree of attention, the accuracy of the witness's prior description of the perpetrator, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Neil,* 400 U.S. at 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401; *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *State v. Chaffin*, 2d Dist. Montgomery No. 25220, 2014-Ohio-2671, ¶ 16.

{¶ 15} Reliability of the pretrial identification is the linchpin in determining its admissibility. *Manson* at 114. "So long as the identification possesses sufficient aspects of reliability, there is no violation of due process." *State v. Sherls*, 2d Dist. Montgomery No. 18599, 2002 WL 254144, *3 (Feb. 22, 2002).

{¶ 16} We review a trial court's decision on a motion to suppress a pretrial identification for an abuse of discretion. *State v. Wilson*, 2d Dist. Montgomery No. 22624, 2009-Ohio-1038, ¶ 19.

{¶ 17} The evidence adduced at the suppression hearing established that Detective Yount used a computerized method to create the photospread. Detective Yount testified that he initially attempted to use OHLEG to create a photospread lineup, but the database was not than accessible. Detective Yount testified that he next attempted to use the JusticeWeb database to retrieve a photograph of Vaughn, but he discovered that Vaughn's photograph was not that database. Therefore, Detective Yount decided to use Vaughn's driver's license photograph to include in the photospread. Detective Yount testified that he retrieved the other five photographs from JusticeWeb in order to create a six-photograph lineup. In choosing the other five photographs, Detective Yount entered Vaughn's height, weight, age, eye color, and ethnicity into the JusticeWeb database; he then chose five photographs that were similar to Vaughn's photograph. Furthermore, since Vaughn's photograph could not be uploaded into the JusticeWeb database for comparison, Detective Yount printed all of the photographs out as 8.5 by 11 inch prints so they would match the size of Vaughn's driver's license photograph. Accordingly, although Detective Yount was unable to utilize JusticeWeb to create the entire photospread, the database was still used to choose the comparison

photographs.

{¶ 18} On appeal, Vaughn argues that the trial court erred when it overruled his motion to suppress the photospread identifications because his photograph stood out from the other photographs and was therefore impermissibly suggestive. Specifically, Vaughn argues that his photograph stood out for the following reasons: 1) his head was tilted to one side; 2) the background of his photograph was a different color than the other photographs chosen; 3) Vaughn was smiling in his photograph; and 4) he was wearing glasses.

{¶ 19} Initially, we note that the trial court found the testimony of Detectives Yount and Warren at the suppression hearing to be credible; we defer to the trial court's assessment of credibility and its conclusion that the officers did not in any way suggest Vaughn's identity to Hamilton or Loprete. Upon review of the photospread lineup shown separately to Hamilton and Loprete, we find that the photospread itself was not impermissibly suggestive so as to require exclusion from evidence. Specifically, in three of the photographs in the spread, the men were wearing eyeglasses. Additionally, the backgrounds in all of the photographs were different colors. All of the photographs depicted clean-shaven African-American men with dark eyes and short hair. While there were some minor differences between the photographs, the other men in the photographs matched Vaughn's main facial characteristics. Therefore, we agree with the trial court's finding that the photospread was not impermissibly suggestive.

{¶ 20} Vaughn also argues that the trial court erred when it found that the procedure followed by Detectives Yount and Warren in creating and administering the photospread complied with R.C. 2933.83. Specifically, Vaughn argues that Detective

Yount failed to use the "folder system" when he created and administered the photospread.

{¶ 21} In *State v. Stevenson*, 2d Dist. Montgomery No. 24821, 2012-Ohio-3396, we stated the following:

This assignment of error implicates R.C. 2933.83(B), which took effect in July 2010. The statute "requires any law enforcement agency or criminal justice entity that conducts live lineups and photo lineups to adopt specific procedures for conducting the lineups." *State v. Ruff*, 1st Dist. Hamilton No. C-110250, 2012-Ohio-1910, ¶ 5. These procedures include, inter alia, using "a blind or blinded administrator" to conduct a photo lineup. R.C. 2933.83(B)(1). Under R.C. 2933.83(C)(1), evidence of a failure to comply with the required protocol "shall be considered by trial courts in adjudicating motions to suppress eyewitness identification resulting from or related to the lineup." The First District Court of Appeals has held, however, that "R.C. 2933.83(C)(1) does not provide an independent ground for suppression, and that [a] trial court [errs] in relying solely on the statute in suppressing" an identification. *Ruff* at ¶ 7. We agree. Indeed, the "penalty" for failure to comply with R.C. 2933.83 is not suppression, but that "the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification." R.C. 2933.83(C)(3).

*Id.* at ¶ 16.

{¶ 22} Pursuant to R.C. 2933.83(A)(2), a "blind administrator" is defined as an

administrator who "does not know the identity of the suspect," while a "blinded administrator" as an administrator who "may know who the suspect is, but does not know which lineup member is being viewed by the eyewitness." R.C. 2933.83(A)(3). " 'Blinded administrator' includes an administrator who conducts a photo lineup through the use of a folder system or a substantially similar system." *Id.* The folder system provides for the inclusion of the suspect's photograph with five "filler photographs," and four "blank photographs," which are placed into ten empty folders and shuffled; the administrator accordingly does not know which folder the witness is viewing when the array is administered. R.C. 2933.83(A)(6). *The statute does not require the use of the folder system. State v. Harmon*, 98 N.E.3d 1238, 2017-Ohio-8106, ¶ 24 (2d Dist.)

{¶ 23} In the instant case, the record establishes that Detective Yount contacted the Tactical Crime Suppression Unit in order to locate an officer who could act as the blind administrator of the photospread lineup to Hamilton and Loprete. As previously stated, Detective Warren was chosen to act as the blind administrator. At the time that Detective Warren administered the photospread, he was unaware that Vaughn was the main suspect in the robbery. Furthermore, Detective Warren testified that he utilized the same procedures for both Hamilton and Loprete when he administered the photospread separately to each witness. Detective Warren testified that he read each witness the instructions and asked them to look at all of the photographs and then choose one if possible. Both witnesses chose Vaughn's photograph and their individual levels of certainty were indicated. Hamilton indicated that she was 90% sure that Vaughn was the man who robbed the bank, while Loprete indicated that she was 80% sure that Vaughn was the perpetrator. Finally, the photospreads were signed by the witnesses

and Detective Warren. Detective Warren also testified that Detective Yount was not present when the photospreads were individually administered. In light of the foregoing, we find that Detectives Yount and Warren properly complied with the requirements of R.C. 2933.83(B). Accordingly, the trial court did not err when it overruled Vaughn's motion to suppress as it related to the creation and administration of the photospreads.

{¶ 24} Vaughn's first assignment of error is overruled.

{¶ 25} Vaughn's second assignment of error is as follows:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE OBTAINED THROUGH EXECUTION OF A SEARCH WARRANT.

{¶ 26} In his second assignment, Vaughn argues that the trial court erred when it overruled his motion to suppress the evidence obtained through the search warrant. Specifically, Vaughn argues that the affidavit in support of the search warrant lacked sufficient factual support because it was based upon anonymous sources without verification of the reliability of those sources. Vaughn also argues that the wrong city was listed in the affidavit.

{¶ 27} In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592. "Accepting those facts as true, we must independently determine as a matter of

law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 28} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide that search warrants may only be issued upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and/or things to be seized. *See also State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 11.

{¶ 29} We begin our analysis with the governing legal standards. Under Crim.R. 41, a request for a search warrant requires a sworn affidavit "establishing the grounds for issuing the warrant." Crim.R. 41(C)(1). The judge may issue a search warrant if the judge finds, based on the information in the affidavit, that "probable cause for the search exists." Crim.R. 41(C)(2). "The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." *Id.* "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶ 30} "[T]he duty of a reviewing court is simply to ensure that the magistrate had

a 'substantial basis for * * * conclud[ing]' that probable cause existed." *Gates* at 238-239, quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 35.   Ordinarily, "a probable cause inquiry must be confined to the four corners of the affidavit." *State v. Klosterman*, 114 Ohio App.3d 327, 333, 683 N.E.2d 100 (2d Dist.1996).   In reviewing whether a search warrant has been issued upon probable cause, courts must examine the totality of the circumstances. *Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, at ¶ 15.

{¶ 31} Trial courts and appellate courts "should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *George*, paragraph two of the syllabus; *Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, at ¶ 14.

{¶ 32} Regarding informants, this Court has previously noted:

"Courts have generally recognized three categories of informants: (1) the identified citizen informant, (2) the known informant, i.e., someone from the criminal world who has a history of providing reliable tips, and (3) the anonymous informant." *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 36, citing *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507 (1999).

"Where a confidential or anonymous informant is the source of the hearsay, the 'informant's veracity, reliability and basis of knowledge are all highly relevant' in a totality of the circumstances probable cause determination. *Gates* at 230 (internal quotations omitted). There must be

some basis in the affidavit to indicate the informant's credibility, honesty or reliability. An affidavit which contains detailed information from informants (permitting an inference that illegal activity was personally observed by the informants), police corroboration of an informant's intelligence through its own independent investigation, or additional testimony by the affiant helps to bolster and substantiate the facts contained within the affidavit. While individual facts and statements themselves may not separately support a probable cause determination, a reviewing court must weigh all of the components together because '[p]robable cause is the sum total of [all] layers of information.' " (Citations omitted.) *State v. Harry*, 12th Dist. Butler No. CA2008-01-0013, 2008-Ohio-6380, ¶ 20.

*State v. Mitchell*, 2d Dist. Montgomery No. 25402, 2013-Ohio-622, ¶ 19-20.

{¶ 33} As we have further noted, while an informant's veracity, reliability and basis of knowledge are highly relevant factors to the determination of probable cause, "those factors are not separate and independent requirements but, rather, 'intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.' " *State v. Harris*, 2d Dist. Montgomery No. 18913, 2002 WL 1041868, *1 (May 24, 2002), quoting *Gates* at 320. "Accordingly, an informant's tip may be reliable despite the deficiency in one factor where there is a strong showing of another factor or some other indicia of reliability." *Id.*, citing *Gates* at 233.

{¶ 34} Finally, we note that the "Supreme Court of the United States held that evidence obtained in violation of the Fourth Amendment by an officer acting in objectively

reasonable reliance on a search warrant issued by a neutral and detached magistrate need not be excluded from state criminal prosecution. (Citations omitted)." *State v. Arnold*, 2d Dist. Clark No. 2016 CA 20, 2017-Ohio-559, ¶ 48.

{¶ 35} Although Vaughn does not specify which section of the affidavit he is referring to, he appears to be referring to paragraph four, which states:

On 02-26-2018, Affiant received an anonymous call who stated the B/M who committed the LCNB bank robbery on 02-23-2018 was his/her neighbor. The caller stated that they lived at the Terraces Apartment located at 150 W. Dorothy Lane Kettering, Ohio. Affiant contacted the Terraces Apartment manager and further investigation revealed the person the anonymous was referring to was Anthony W. Vaughn who lived in apartment 326. Affiant ran Anthony Vaughn in law enforcement databases and discovered Mr. Vaughn is the co-owner of a black Pontiac G6 * * *.

{¶ 36} It is undisputed that an anonymous witness, later identified as Donna Johnson, called the police and suggested that her neighbor committed the bank robbery. However, Detective Yount verified the information provided by the anonymous witness by calling the Terraces Apartment complex and speaking with the manager of the premises. Through further investigation, Detective Yount was able to determine that there was a black Pontiac G6 parked in the parking lot of the apartment complex and that the person the anonymous caller was referring to was Vaughn. Detective Yount then proceeded to run Vaughn's name through police databases and discovered that he co-owned a black Pontiac G6, the very car in which the robbery suspect was seen leaving. Additionally, the affidavit states that when Detective Yount went to the Terraces Apartment to

investigate the black Pontiac G6, not only was the vehicle found to be owned by Vaughn, but the exterior of the vehicle had red dye on it, which was similar to the kind used in the dye pack which exploded on Vaughn and his vehicle as he tried to leave the scene of the robbery. Therefore, while the initial call regarding the identity of the robbery suspect may have been anonymous, Detective Yount was able to verify the anonymous tip through further investigation.

{¶ 37} Furthermore, it is undisputed that the affidavit incorrectly stated "that there is probable cause to believe" that the offense of aggravated robbery occurred in Kettering, Ohio. This statement was incorrect because the LCNB Bank that was robbed was located in Oakwood, Ohio. Upon review, we find that this is nothing more than a clerical error and did not render the search warrant deficient. The LCNB Bank in question is located on the southern edge of Oakwood, which borders Kettering. Additionally, the locations to be searched that were the subject of the search warrant, Vaughn's apartment and vehicle, were located in Kettering, nearby the bank, and all locations were in Montgomery County, Ohio. Accordingly, the trial court did not err when it overruled Vaughn's motion to suppress the search warrant.

{¶ 38} Vaughn's second assignment of error is overruled.

{¶ 39} Vaughn's third assignment of error is as follows:

THE TRIAL COURT ERRED IN PERMITTING WITNESS DANIEL DAVISON TO TESTIFY AS AN EXPERT WITNESS ON MATERIALS COMPOSITION/COMPARISON.

{¶ 40} In his third assignment, Vaughn contends that the trial court erred when it permitted Daniel Davison to testify as an expert in the field of materials

composition/comparison.

{¶ 41} The admissibility of expert testimony is a matter committed to the sound discretion of the trial court, and the trial court's ruling will not be overturned absent an abuse of that discretion. *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 9. We first note that expert testimony must meet the threshold of being relevant to a trial issue. Evid.R. 401. If so, then we must determine whether it is sufficiently reliable under Evid.R. 702. *State v. Abner*, 2d Dist. Montgomery No. 20661, 2006-Ohio-4510, ¶ 26.

{¶ 42} Under Evid.R. 702, a witness may testify as an expert if "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; and (C) The witness' testimony is based on reliable scientific, technical, or other specialized information."

{¶ 43} It is well-established that an expert witness need not be the best witness on the subject. *Alexander v. Mt. Carmel Med. Ctr.*, 56 Ohio St.2d 155, 159, 383 N.E.2d 564 (1978). "The test of admissibility is whether a particular witness offered as an expert will aid the trier of fact in the search of the truth." *Ishler v. Miller*, 56 Ohio St.2d 447, 453, 384 N.E.2d 296 (1978).

{¶ 44} Davison was called by the State to testify as an expert witness in the field of trace evidence. Davison testified that he had been employed at the Bureau of Criminal Investigation (BCI) since 1997 as a forensic scientist. Davison also testified that he had attended several BCI classes, including a class taught by an expert in the use of an

infrared spectrometer. Davison testified that he specialized in trace evidence, which included impression analysis and materials analysis. Davison testified that he had been trained in the use of the FTIR Spectrometer for chemical comparisons and that he had been designated as an expert in materials comparison at least once before. Davison testified that he had testified as an expert witness in approximately 55 trials in Ohio and other states.

**{¶ 45}** In the instant case, Davison's testimony established that he was qualified to testify as an expert regarding the chemical composition of the red dye found on Vaughn's clothes, vehicle, and the bank's money discovered in his apartment. Absent a specific argument regarding Davison's qualifications as an expert witness, we find Vaughn's argument on this point to be unpersuasive. *See State v. Ross*, 2d Dist. Montgomery No. 19036, 2002-Ohio-6084, ¶ 19. Accordingly, the trial court did not err when it permitted Davison, over objection, to testify as an expert in the field of materials composition/comparison.

**{¶ 46}** Vaughn's third assignment of error is overruled.

APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN NOT REQUESTING EYEWITNESS IDENTIFICATION JURY INSTRUCTIONS IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATED CONSTITUTION.

**{¶ 47}** In his fourth assignment, Vaughn argues that his counsel was ineffective for failing to request a jury instruction regarding eyewitness testimony, as he alleges that the photospreads shown to Hamilton and Loprete were "flawed."

{¶ 48} "We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. * * *" *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31.

{¶ 49} An appellant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *Strickland*. A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v.*

*Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

{¶ 50} Here, Vaughn argues that his counsel was ineffective for failing to request a limiting jury instruction required by R.C. 2933.83(C)(3), which states in pertinent part:

(C) For any photo lineup or live lineup that is administered on or after the effective date of this section, all of the following apply:

* * *

(3) When evidence of a failure to comply with any of the provisions of this section, or with any procedure for conducting lineups that has been adopted by a law enforcement agency or criminal justice agency pursuant to division (B) of this section and that conforms to any provision of divisions (B)(1) to (5) of this section, is presented at trial, the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup.

{¶ 51} As stated in our analysis of Vaughn's first assignment, Detectives Yount and Warren both complied with the requirements of R.C. 2933.83(B). Therefore, Vaughn's trial counsel's decision not to request an instruction under R.C. 2933.83 was reasonable. When there is evidence of noncompliance with the requirements of R.C. 2933.83, a trial court must "instruct the jury that such noncompliance may be considered in determining the credibility of the witness identification." *State v. Jones*, 8th Dist. Cuyahoga No. 102318, 2015-Ohio-4694, ¶ 55, citing R.C. 2933.83(C)(3). Contrary to Vaughn's argument, there was no evidence of noncompliance with the requirements of R.C. 2933.83. Accordingly, any request for a limiting instruction pursuant to R.C. 2933.83(C)(3) was unnecessary and therefore cannot be the basis for a claim of

ineffective assistance of counsel.

**{¶ 52}** Vaughn's fourth assignment of error is overruled.

**{¶ 53}** Vaughn's fifth and final assignment of error is as follows:

APPELLANT'S CONVICTION FOR ROBBERY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 54}** In his final assignment, Vaughn contends that his conviction for robbery was against the manifest weight of the evidence.

**{¶ 55}** This court has stated that "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citations omitted). *State v. Jones*, 2d Dist. Montgomery No. 25724, 2014-Ohio-2309, ¶ 8. "When evaluating whether a [judgment] is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

**{¶ 56}** Because the trier of fact sees and hears the witnesses at trial, we must extend deference to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we extend less deference in weighing competing inferences suggested by the evidence. *Id.* The fact that the evidence is subject to differing interpretations does not render the judgment against the manifest weight of the

evidence. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 14. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 57} As previously stated, Hamilton and Loprete both identified Vaughn as the man who entered the LCNB Bank and robbed them. Donna Johnson watched the surveillance video of the robbery on television and notified the police that the man in the video was her neighbor. The surveillance video depicted a man who drove into the CVS parking lot next to the LCNB Bank in a black Pontiac G6, parked and exited the vehicle, and walked toward the bank. The video then depicted the same individual walk back to the vehicle as the dye pack exploded. After the dye pack exploded, the man got in the vehicle and drove away. Approximately $1,700 was recovered from Vaughn's apartment, in addition to clothes marked with traces of red dye and a pouch similar to the one observed in the bank surveillance video. The recovered money also had pink stains on it, and the money appeared as if it had recently been wet and then dried. Furthermore, traces of red dye were found on Vaughn's vehicle. Forensic scientist Daniel Davidson testified that the red dye found on the money matched the red dye found on Vaughn's vehicle.

{¶ 58} Having reviewed the record, we find no merit in Vaughn's manifest weight challenge. It is well settled that evaluating witness credibility is primarily for the trier of fact. *State v. Brown*, 2d Dist. Montgomery No. 27571, 2018-Ohio-3294; *see also State v. Benton*, 2d Dist. Miami No. 2010-CA-27, 2012-Ohio-4080, ¶ 7. A trier of fact does not lose its way and create a manifest miscarriage of justice if its resolution of conflicting

testimony is reasonable. *Id.* Here, the jury reasonably credited the State's evidence, which established that Vaughn was guilty of the offense for which he was convicted. Accordingly, the jury did not lose its way and create a manifest miscarriage of justice in reaching a guilty verdict for robbery.

{¶ 59} Vaughn's fifth and final assignment of error is overruled.

{¶ 60} All of Vaughn's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and FROELICH, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
David R. Miles
Hon. Timothy N. O'Connell