[Cite as *State v. Almeyda*, 2020-Ohio-3982.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-72 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-240 |
| | : | |
| OSCAR R. ALMEYDA | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of August, 2020.

. . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

KRISTIN L. ARNOLD, Atty. Reg. No. 0088794, 120 West Second Street, Suite 1717, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Oscar R. Almeyda, appeals from his conviction in the Clark County Court of Common Pleas after the trial court found him guilty of one count of unauthorized use of a vehicle. In support of his appeal, Almeyda contends that his conviction was against the manifest weight of the evidence. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On April 22, 2019, a Clark County grand jury returned an indictment charging Almeyda with one count of unauthorized use of a vehicle in violation of R.C. 2913.03(B). The charges stemmed from allegations that Almeyda borrowed a vehicle from his employer and failed to return the vehicle the next day as agreed. Almeyda instead kept the vehicle for an additional 11 days before eventually returning it to his employer.

{¶ 3} Almeyda pled not guilty to the indicted charge and the matter proceeded to a bench trial. At trial, the State presented testimony from Almeyda's employer, Lucian Robert Adams. The State also presented testimony from Officer Seth Cosby of the Springfield Police Department. Almeyda did not present any witness testimony in his defense.

{¶ 4} The testimony elicited at trial established that Almeyda began working at AAMCO Transmission and Total Car Care ("AAMCO") in Springfield, Ohio, during the last week of March 2019. Shortly after he was hired, on April 4, 2019, Almeyda advised one of AAMCO's owners, Adams, that he did not have a ride home and asked Adams if he could use one of the shop's "loaner" vehicles to drive himself home. Adams agreed to

let Almeyda use AAMCO's 2006 Cadillac DHS, which Almeyda was supposed to return the next day when he reported to work.

*April 5th and 6th*

{¶ 5} On Friday April 5th, Almeyda did not show up to work and otherwise failed to call Adams to report his absence.   By Saturday April 6th, Adams still had heard nothing from Almeyda.   As a result, Adams sent a text message to Almeyda's personal cell phone asking Almeyda if he was coming into work that day.   Almeyda responded by texting Adams: "[Y]es, I'll be there shortly."   Trial Trans. p. 15.   However, an hour later, Almeyda sent Adams another text message saying:

> I apologize, there's a huge problem with my PRC and a parole board. I'll explain it Monday.   This was completely out of the norm and unexpected.   I still got the Cadillac.   Everything's okay.   I'll see you Monday morning with my court papers to show you what happened.   They actually arrested me for a mistake the parole board made.

*Id.*

{¶ 6} After receiving Almeyda's text message, Adams replied: "[O]kay, I'll see you then."   *Id.*

*April 8th*

{¶ 7} On the morning of Monday April 8th, instead of returning the vehicle as promised, Almeyda sent Adams the following text message:

> [I]t's Oscar, I have one more meeting at 9:15 with the parole board

today and this is done and behind me. I know this is very unexpected, believe me, it messed me up too. I have all the paperwork and everything to show you. I'll see you about 10:00 or 10:30 this morning.

Trial Trans. p. 17.

{¶ 8} Adams once again replied: "[O]kay, I'll see you then." *Id.* Almeyda, however, did not return the vehicle as promised.

*April 9th*

{¶ 9} On Tuesday April 9th, Adams texted: "I'm not really sure what's going on but I need my car back. I really need a phone call from you." Trial Trans. p. 18. Almeyda responded by texting: "[Y]es sir, I'll be there at lunchtime. I've had a crazy last couple of days. Thank the good Lord everything worked on my side." *Id.*

{¶ 10} Instead of arriving with the vehicle at lunchtime, Almeyda sent Adams another text message later that day saying: "[I]f you'd be available around 8:00, I will call you at 8:00 so I can explain the madness." *Id.* Almeyda, however, never called Adams and never returned the vehicle on April 9th.

*April 10th*

{¶ 11} On Wednesday April 10th, Adams texted Almeyda the following message: "I need the car back today before noon. Otherwise, I'll have to report it. I don't want to have to do that but five days is a bit much." Trial Trans. p. 19-20. To this, Almeyda replied: "I'll be there in just a little bit. We need to talk." *Id.* at 20. Adams then texted: "I'm in Cincinnati all day. I just need the loaner back." *Id.* Almeyda responded by

texting: "I'm on my way there." *Id.* Two hours later, Almeyda sent Adams another text message saying: "I just got done, I'm heading there now man, seriously." *Id.* Almeyda, however, never arrived with the vehicle.

*April 11th*

{¶ 12} On Thursday April 11th, Adams texted Almeyda the following message:

> Okay. So you've missed every time frame you've set up to be here. I've given the benefit of the doubt every time but I need that car back. I have customers I need to put it in. There's no reason that seven days later it shouldn't be here, no matter what's going on. So, again, it gets here today by noon.

Trial Trans. p. 21-22.

{¶ 13} After Almeyda failed to make the noon deadline, Almeyda texted Adams the following message: "I'll see you shortly, man, I just got out of court." *Id.* at 22. Adams then responded: "[O]kay, I need the car by 5:00 tonight. Otherwise, I'm going to have to report it." *Id.* Almeyda did not return the vehicle on April 11th.

*April 12th*

{¶ 14} On Friday April 12th, Adams texted Almeyda: "It's 20 till 5:00. I need the car back by 5:00 tonight. Otherwise I'm going to have to report it as stolen." Trial Trans. p. 23. In response, Almeyda texted Adams:

> I'm waiting on a ride to follow me up there. She off at 8:00. I can drop off, put keys under mat. That's the best I can do, man. I promise,

I'll have it up there as soon as she gets off work.

*Id.*

**{¶ 15}** Adams then replied:

I'll drive here later tonight.   If it's not here, I'm calling.   Just feel like I've given every opportunity in the world to get it back here.   Kind of left with no other choice.

*Id.*

**{¶ 16}** Almeyda responded: "I understand."   *Id.*

**{¶ 17}** Because Almeyda consistently failed to return the vehicle, Adams contacted the Springfield Police Department on April 12th and reported the vehicle as stolen. Adams spoke with Officer Seth Cosby and provided Officer Cosby with the vehicle's license plate number and Almeyda's personal information.   Officer Cosby then attempted to contact Almeyda by calling his cell phone, but Almeyda did not answer the call.   Officer Cosby thereafter listed the vehicle as stolen and prepared a report documenting his conversation with Adams.

*April 13th*

**{¶ 18}** On Saturday April 13th, Almeyda sent Adams a text message saying: "I'm on my way."   Trial Trans. p. 24.   Adams replied: "[O]kay, put the keys in the night drop box, black box on the left side of the building."   *Id.*   Almeyda responded: "[W]ill do thanks," but Almeyda did not return the vehicle as promised.   *Id.* at 25.   Almeyda thereafter texted Adams: "I'm headed your way in 30 minutes, I promise you."   *Id.* Adams then texted: "[Y]ou've missed every time that you've set up so far.   Really just

over it all. It's here by then or I'm done." *Id.* After 30 minutes passed without Almeyda returning the vehicle as promised, Adams texted: "[I]t's 9:15, 30 minutes has come and gone." *Id.* Almeyda then responded: "I promise, I'm coming, no BS, man." *Id.* Almeyda, however, did not return the vehicle on April 13th.

### April 14th

{¶ 19} On Sunday April 14th, Almeyda still had not returned the vehicle. As a result, Adams texted: "[S]till not here, making the call now." Trial Trans. p. 26. Almeyda responded: "[G]ive me 45 minutes and I'll be there." *Id.* After an hour passed without Almeyda arriving with the vehicle, Adams texted: "[I]t's been another hour." *Id.* An hour and a half later, Almeyda sent Adams a text message with an attached photograph. The photograph was taken out of the window of the vehicle in question showing its location at an intersection. Almeyda, however, did not return the vehicle on April 14th.

### April 15th

{¶ 20} On Monday April 15th, Almeyda texted Adams: "Getting on the highway now. I sincerely apologize. I don't mean to put you through this." Trial Trans. p. 27. Later in the day, Adams replied by texting: "Didn't realize it took more than four hours to get here from Huber Heights to Dayton." *Id.* Almeyda then texted: "[C]an you meet me at the shop at 7:30 tomorrow morning[?]" Adams responded: "I take my kids to school every morning and don't get there till right at 8:00." *Id.* In response, Almeyda texted back:

> [O]kay, I will be there then. I'm ready to get back to work and my

attorney is meeting me at 2:30 at the shop, if that's okay. I have lots to explain to you guys. It's all behind me now.

*Id.* at 27-28.

**{¶ 21}** That same day, Officer Cosby contacted Adams to confirm whether the vehicle was still missing. Upon learning that it was still missing, Officer Cosby filed a warrant for Almeyda's arrest and supplemented his police report.

*April 16th*

**{¶ 22}** On Tuesday April 16th, Almeyda failed to return the vehicle by 8:00 a.m. as promised. As a result, Adams sent a text message to Almeyda that morning saying: "So you've missed 8:00 o'clock. So how about you just tell me where my car is and we'll come and get it." Trial Trans. p. 29. Almeyda responded by texting: "I never heard back from you so I am heading there." *Id.* An hour and a half later, Almeyda texted Adams:

> I just got out of the shower. I'm on my way. 12 o'clock, I'll be there shortly. I'm not too much longer. I'm leaving downtown Dayton at the Reibold building.

*Id.*

**{¶ 23}** Almeyda eventually returned the vehicle to Adams on April 16th. At trial, Adams testified that Almeyda had used the vehicle without consent for 11 days. On cross-examination, Adams agreed that the language of his text messages essentially gave Almeyda until April 8th to return the vehicle, and also until noon on April 10th, noon on April 11th, and 5:00 p.m. on April 11th. Adams also confirmed that he agreed to meet

Almeyda on the morning of April 15th. However, during his redirect examination, Adams clarified that despite the language in his text messages, he wanted Almeyda to return the vehicle on April 5th and every day the vehicle was missing after that.

{¶ 24} Copies of all the relevant text messages between Almeyda and Adams were admitted into evidence as State's Exhibits 1 through 11. In addition, the police reports prepared by Officer Cosby and an April 2019 calendar were admitted as Defendant's Exhibits A, B, and C.

{¶ 25} During his closing argument, Almeyda pointed out that the State's bill of particulars narrowed the timeframe of his offense down to April 12, 2019, through April 16, 2019. In an effort to establish the affirmative defense under R.C. 2913.03(C)(1), Almeyda argued that the text message conversations between himself and Adams led him to reasonably believe that Adams had given him consent to use the vehicle during the period of time in question.

{¶ 26} After considering the matter, the trial court found that Almeyda failed to establish the affirmative defense under R.C. 2913.03(C)(1). Specifically, the trial court found that Almeyda failed to present any evidence demonstrating his subjective belief that Adams had consented to his extended use of the vehicle during their text message conversations. The trial court also found that the text message conversations did not demonstrate that it was reasonable for Almeyda to believe that he had been given permission to use the vehicle during the period of time in question. The trial court thereafter found Almeyda guilty of unauthorized use of a vehicle in violation of R.C. 2913.03(B).

{¶ 27} The trial court sentenced Almeyda to six months in prison. The trial court,

however, placed Almeyda on an appellate bond and suspended his prison sentence pending the outcome of an appeal from his conviction. Almeyda then filed the instant appeal from his conviction, and he raises a single assignment of error for review.

**Assignment of Error**

{¶ 28} Almeyda contends that his conviction for unauthorized use of a vehicle was against the manifest weight of the evidence. We disagree.

{¶ 29} "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citations omitted). *State v. Jones*, 2d Dist. Montgomery No. 25724, 2014-Ohio-2309, ¶ 8. When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 30} "Because the trier of fact sees and hears the witnesses at trial, we must extend deference to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." *State v. Vaughn*, 2d Dist. Montgomery No. 28409, 2020-Ohio-307, ¶ 56, citing *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). The fact that the evidence is subject to differing interpretations

does not render the judgment against the manifest weight of the evidence. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 14. "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Christon*, 2d Dist. Greene No. 2019-CA-43, 2020-Ohio-1524, ¶ 17, quoting *Martin* at 175.

{¶ 31} As previously discussed, Almeyda was convicted under R.C. 2913.03(B), which provides:

> No person shall knowingly use or operate an aircraft, motor vehicle, motorboat, or other motor-propelled vehicle without the consent of the owner or person authorized to give consent, and either remove it from this state or keep possession of it for more than forty-eight hours.

{¶ 32} Thus, "R.C. 2913.03(B) prohibits the use or operation of a motor vehicle without, beyond, or after revocation of the owner's consent." *State v. Rose*, 63 Ohio St.3d 585, 589 N.E.2d 1315 (1992), syllabus; *State v. Cornish*, 2d Dist. Miami No. 95-CA-65, 1996 WL 417003, *1 (July 26, 1996).

{¶ 33} Almeyda does not dispute that the State presented evidence establishing that he knowingly used the vehicle at issue without Adams' consent for more than 48 hours. Instead, Almeyda contends that the weight of the evidence supported the affirmative defense codified in R.C. 2913.03(C)(1). Pursuant to that section, an affirmative defense to a violation of R.C. 2913.03(B) exists if: "At the time of the alleged offense, the actor, though mistaken, reasonably believed that the actor was authorized to use or operate the property." R.C. 2913.03(C)(1). The accused has the burden of proving this affirmative defense by a preponderance of the evidence. *State v. Norris*,

2018-Ohio-610, 106 N.E.3d 333, ¶ 14 (2d Dist.), citing R.C. 2901.05(A).

{¶ 34} Almeyda contends that the weight of the evidence supported finding that he reasonably, albeit mistakenly, believed he was authorized to use Adams' vehicle during the period of time in question. The only evidence Almeyda relies on in support of this claim are the text messages that he received from Adams. Almeyda claims that because Adams sent him text messages that continually gave him more time to return the vehicle, he in turn reasonably believed that he was allowed to continue to use the vehicle for the period of time in question.

{¶ 35} After reviewing the entire record and weighing all the evidence and reasonable inferences, we do not find that the trial court lost its way and created a manifest miscarriage of justice in finding that Almeyda failed to prove the affirmative defense under R.C. 2913.03(C)(1). Contrary to Almeyda's claim otherwise, the weight of the evidence did not support finding that he reasonably believed he was authorized to use the vehicle over the period of time in question. Although some of Adams' initial text messages arguably appeared to give Almeyda more time to return the vehicle, by April 12th it should have been clear to Almeyda that his continued use of the vehicle was not authorized when Adams sent Almeyda a text message threatening to report the vehicle as stolen.

{¶ 36} Simply because Adams later agreed to meet with Almeyda at 8:00 a.m. on April 16th does not establish that Adams consented to Almeyda's using the vehicle up until that time. By that point, Adams had already threatened to report the vehicle as stolen and sent multiple text messages to Almeyda that would have led any reasonable person to believe that Almeyda's continued use of the vehicle was unauthorized.

{¶ 37} For example, on April 12th, after Adams had already threatened to report the vehicle as stolen, and after Almeyda still failed to return the vehicle, Adams sent Almeyda the following text message: "If it's not here, I'm calling [the police].   Just feel like I've given every opportunity in the world to get it back here.   Kind of left with no other choice."   Trial Trans. p. 23.   Also, on April 13th Adams texted: "You've missed every time that you've set up so far.   Really just over it all.   It's here [in 30 minutes] or I'm done."   *Id.* at 25.   These text messages do not convey that Adams consented to Almeyda's continued use of the vehicle and thus do not support Almeyda's claim that he reasonably believed he had such consent.

{¶ 38} For the foregoing reasons, Almeyda's conviction for unauthorized use of a vehicle was not against the manifest weight of the evidence.   Therefore, Almeyda's sole assignment of error is overruled.


**Conclusion**

{¶ 39} Having overruled Almeyda's assignment of error, the judgment of the trial court is affirmed.


. . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.


Copies sent to:

John M. Lintz
Kristin L. Arnold
Hon. Dale A. Crawford, Visiting Judge